IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-20057-JWL |
| | ) | |
| HERMAN RANSOM, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Herman Ransom was indicted in May 2009 for wire fraud, in violation of 18

U.S.C. § 1343, and for theft of public money, in violation of 18 U.S.C. § 641.  In July

2009, Mr. Ransom filed a motion to dismiss the indictment for failure to state an offense

as to all alleged counts.  (Doc. #7)  In his motion to dismiss, Mr. Ransom asserts that the

government cannot, as a matter of law, prove beyond a reasonable doubt all elements of

the offenses charged.  In particular, Mr. Ransom contends that his status as a salaried

federal employee, exempt from the minimum wage and overtime provisions of the Fair

Labor Standards Act (FLSA),[1] precludes the government from convicting him under

---

[1] The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201-219 establishes requirements for
minimum wage and overtime compensation for both private and public sector employees.
However, the FLSA exempts certain employees from the minimum wage and overtime
requirements, including those employed in a "bona fide executive, administrative, or
professional capacity."  29 U.S.C. § 213(a)(1).  Employees exempt from these provisions
are referred to as "exempt employees" or "FLSA exempt."  Mr. Ransom contends that he

either statute for allegedly falsifying his time and attendance records. For the reasons

explained below, the Court denies Mr. Ransom's motion to dismiss the indictment as to

all counts.

## I. BACKGROUND[2]

Mr. Ransom worked for the U.S. Department of Housing and Urban Development

("HUD"), with the duty to oversee its Office of Multifamily Housing ("OMH") programs

in Kansas, Missouri, Iowa, Nebraska, and Oklahoma. He managed and supervised

approximately 89 employees at HUD offices in Kansas City, St. Louis, Des Moines,

Omaha, and Oklahoma City. As a supervisor and manager, Mr. Ransom was classified as

---

qualifies as FLSA-exempt under the "executive" exemption because of his status as a
supervisor for 89 employees in various offices across the Midwest.

[2] Mr. Ransom stipulated to the following facts for purposes of the present motion. In its
response to Mr. Ransom's motion and at oral argument, the government, relying on
*United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994), and the cases which have followed
*Hall*, argued that a Rule 12(b) motion is an inappropriate procedural mechanism at this
point in the proceedings because Mr. Ransom did not agree to stipulate to all of the
essential underlying facts. In particular, the government noted that Mr. Ransom failed to
stipulate that he intentionally committed the offenses of wire fraud and theft of
government property. The government pointed out that he had failed to stipulate to filing
false reports, of his knowledge of their falsity, and their impact upon the amount received
in salary. (Doc. #10 at 6). At oral argument, the government reiterated its objection.
The government's argument goes too far. As discussed at oral argument, the Court
recognizes that the *Hall* procedure may be applied only where the relevant facts are not in
dispute, but finds the issues of Mr. Ransom's intent and knowledge irrelevant for
purposes of deciding the present motion. Mr. Ransom conceded at oral argument that if
the Court denied his motion to dismiss on the basis of the legal issues raised, the question
of his intent would be a matter for the jury to determine. See *United States v. Deguzman*,
133 Fed. Appx. 501, 504 (10th Cir. 2005) (unpublished opinion) ("[t]he wire and mail
fraud charges require that the jury find that [the defendant] acted with intent to defraud or
intent to deceive") (quoting *United States v. Lawrence*, 405 F.3d 888, 900 (10th Cir.
2005)). Thus the facts Mr. Ransom does admit include all of those necessary to evaluate
his contentions under *Hall* and its progeny.

a GS-15 level supervisory employee, and was paid at a pay grade of GS-15, step 9.

Every other week, Mr. Ransom submitted a Time and Attendance Record (T & A record)

as well as a Summary Sheet or a STAR Time and Attendance Report.  These records and

reports set forth the number of hours Mr. Ransom claimed to have worked within the

relevant time period, as well as the number of hours taken off work.  The T & A record

included the following categories, among others: regular time, annual leave, sick leave

and family leave.  Mr. Ransom's secretary prepared the reports and Mr. Ransom signed

them.  They were then approved by Mr. Ransom's supervisor and forwarded to the

payroll administrative office.

The government contends Mr. Ransom failed to accurately record the number of

hours he worked on the T & A records, resulting in his being paid in excess of that

amount he would otherwise have been entitled to.  According to the government, this

constitutes wire fraud as well as theft of government property, in violation of 18 U.S.C. §

1343 and 18 U.S.C. § 641, respectively.  However, Mr. Ransom asserts that the

government cannot, as a matter of law, prove his guilt beyond a reasonable doubt, as he

was during all relevant times entitled to his full salary regardless of the number of hours

he recorded as having worked.

## II.  LEGAL STANDARD FOR A MOTION TO DISMISS AN INDICTMENT

Mr. Ransom seeks a pre-trial dismissal of the indictment for failure to state an

offense pursuant to Fed.R.Crim. P. 12(b)(2), which states that "[a] party may raise by

pretrial motion any defense, objection, or request that the court can determine without a

trial of the general issue." An indictment is considered constitutionally sufficient if it "(1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991) (citing *United States v. Kilpatrick*, 821 F.2d 1456, 1461 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)). *See also United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008). Generally, the sufficiency of the government's evidence to support a particular charge may not be tested by challenging the indictment prior to trial. *See United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) and *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). The appropriate inquiry on a motion to dismiss an indictment is not whether the government has presented sufficient evidence to support the charge, but rather whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense. *Todd*, 446 F.3d at 1067 (citing *Hall*, 20 F.3d at 1087 and *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)). Therefore, courts are to "avoid considering evidence outside the indictment when testing the indictment's legal sufficiency." *Id.* (citing *Hall*, 20 F.3d at 1087).

However, in certain "limited circumstances," an indictment may be dismissed before trial even if facially valid where "undisputed evidence shows that, as a matter of law, the [d]efendant could not have committed the offense for which he was indicted." *Todd*, 446 F.3d at 1068. This procedure may be utilized only where (1) the underlying

facts are undisputed and (2) the government does not object to the court considering such factual evidence. *Id.* (citing *Hall*, 20 F.3d at 1088). Such dismissals are to be the "rare exception," rather than the rule. *Id.* The Tenth Circuit has explained that this exception permits a court to look beyond the facial validity of the indictment to consider its factual basis, to determine "whether the elements of the criminal charge can be shown sufficiently for a submissible case." *Brown*, 925 F.2d at 1304. However, it has cautioned that such dismissals "are not to be made on account of a lack of evidence to support the government's case." *Todd*, 446 F.3d at 1608.

## III. DISCUSSION

Mr. Ransom does not contest the facial validity of the indictment but rather asserts that the undisputed evidence conclusively establishes he could not have committed either of the charged offenses and that the Court must therefore dismiss the indictment pursuant to the procedural mechanism outlined in *Brown* and *Todd*. Mr. Ransom contends that as an FLSA-exempt, salaried federal employee, he was entitled to his full salary regardless of the number of hours he actually worked. As a result, he could not have received anything to which he was not entitled by submitting false T & A Reports and therefore could not have stolen government property or devised a scheme to do so. The government concedes that Mr. Ransom qualifies as an FLSA-exempt, salaried federal employee but argues that his status as such does not shield him from criminal prosecution because a salaried federal employee is not entitled to receive a full salary if he works

fewer hours than his administrative workweek calls for and does not account for the
missed time through approved leave.


## A.  Wire Fraud

Mr. Ransom contends that the government may not, as a matter of law, prove
beyond a reasonable doubt all elements of the offense of wire fraud because he could not
have advanced any alleged fraudulent scheme by submitting falsified T & A Reports as
he was entitled to his entire salary regardless of the number of hours worked.  According
to Mr. Ransom, the T & A Reports therefore had no bearing upon whether he was paid
his full salary and were instead submitted because administrative policy required it.[3]  Mr.
Ransom additionally contends that the government cannot establish materiality of any of
the false statements made in the T & A Reports because the statements regarding the
number of hours worked could not have impacted HUD's decision to pay Mr. Ransom
his salary.  At oral argument, Mr. Ransom essentially took the position that HUD's
recourse would have been to fire Mr. Ransom for not working enough hours but it could

---

[3] According to Mr. Ransom, the reports had to be filed to ensure agency compliance with
the requirements of the FLSA.  The FLSA requires that employers of certain employees,
including executive, administrative, and professional employees, "maintain and preserve
records" containing certain information and data such as name, home address, date of
birth, sex and occupation, time of day and day of week on which their workweek begins,
regular rate of pay for any week in which overtime is due, *total hours worked each day
and each week*, and total earnings.  *See* 29 C.F.R. §516.2(a) and 29 C.F.R. § 516.3
(emphasis added).  The records must also contain the "basis on which wages are paid" in
enough detail to be able to calculate "for each pay period" the employee's "total
remuneration for employment..."

not have docked his pay. Even under his own theory of the case, Mr. Ransom's argument that the wire fraud count should be dismissed fails.

The fraud statute in question, 18 U.S.C. § 1343, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire…communication in interstate or foreign commerce, any writings…for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

An individual is guilty of wire fraud if, "'for the purpose of executing [a] scheme or artifice' to defraud or to obtain money by false pretenses, he 'transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds.'" *United States v. Redcorn*, 528 F.3d at 737 (quoting 18 U.S.C. § 1343). "[A] scheme to defraud is conduct intended or reasonably calculated to deceive persons of ordinary prudence or comprehension." *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994). *See also United States v. Wittig*, 575 F.3d 1085, 1099 n. 3 (10th Cir. 2009) ("interpretations of the mail fraud statute are, of course, authoritative on questions of wire fraud") (citing *Pasquantino v. United States*, 544 U.S. 349, 355 n. 2 (2005)). Fraudulent intent may be derived from the defendant's "indifference to the truth of statements" and "even though a defendant may firmly believe in his plan, his belief will not justify baseless or reckless representations." *United States v. Reddeck*, 22 F.3d 1504, 1507 (10th Cir. 1994) (quoting *United States v. Themy*, 624 F.2d 963, 965 (10th Cir. 1980)).

The Court concludes that a submission of falsified T & A Reports by an FLSA-exempt, salaried federal employee may advance a scheme to defraud the government and the employing agency even if it has no bearing upon the amount of salary the individual receives in a particular pay period.[4]  A wire transmission is "considered to be for the purpose of furthering a scheme to defraud 'so long as the transmission is incident to the accomplishment of an essential part of a scheme.'"  *Redcorn*, 528 F.3d at 738 (quoting *United States v. Mann*, 884 F.2d 532, 536 (10th Cir. 1989)).  Had Mr. Ransom accurately recorded the number of hours he actually worked during the course of a pay period and failed to account with leave for all of his absent time, HUD would have had the opportunity to exercise its right to terminate Mr. Ransom's employment if it so chose.  But it was deprived of valuable information about Mr. Ransom's work habits by virtue of his false reports.  Therefore, regardless of whether the submission of falsified T & A Reports impacted the amount Mr. Ransom received in any given paycheck, it did help permit Mr. Ransom to continue his employment despite his reduced work hours and to continue to receive a paycheck.  Therefore, if the government can establish the requisite intent at trial, the submission of the Reports could be said to have resulted in a deprivation of something of value to the United States—namely, the amount paid Mr. Ransom in salary—by means of deceit.  *See United States v. Burns*, 104 F.3d 529 (2nd Cir. 1997) (upholding a wire fraud conviction where the defendant submitted fraudulent time records to deceive his employer as to the time he spent working, in order to continue

---

[4] The Court rejects below, in discussing the theft count, Mr. Ransom's basic premise that he was entitled to his salary regardless of the number of hours he worked.

receiving a salary funded by a federal grant while attending college full time).  Their

submission was therefore an integral part of the scheme even if they did not impact the

amount received by Mr. Ransom in a given paycheck.[5]

Moreover, there is a separate basis to reject Mr. Ransom's contention.  Federal

regulations clearly indicate that leave is not an unlimited resource that may be drawn

upon without consequence to the employee but rather a limited resource for which the

government may seek an after-the-fact accounting in the event the employee receives

leave without an entitlement to it.  *See* 5 C.F.R. § 630.209 (stating that if leave is

provided to an employee though he has not yet earned it and the employment ends

without the employee having earned it, then the employee must refund the extra amount

paid).  Therefore, if Mr. Ransom submitted false reports with the requisite intent, the

government could have been deprived of the opportunity to recoup the unearned leave

taken.  *See also United States v. Baker*, 626 F.2d 512, 515 (5th Cir. 1980) (concluding that

false statements made by part-time employees in their time sheets qualified as material).

The Court also concludes that the false statements may qualify as "material" even

if they did not impact HUD's decision to pay Mr. Ransom his salary within a given pay

period, because the government could show that they did result in Mr. Ransom's

continued employment.  To establish mail or wire fraud, the government must establish

materiality of the falsehood.  *Neder v. United States*, 527 U.S. 1, 25 (1999).  Mr. Ransom

correctly notes that a false statement is "material" if it "has a natural tendency to

_____

[5] The Court recognizes that the government could also prove fraud at trial by showing
that Mr. Ransom's false reports did impact the amount he received in any given paycheck
in light of the analysis below concerning theft.

influence, or is capable of influencing a decision or action by another." *See United States v. Lawrence*, 405 F.3d 888, 899 (10th Cir. 2005) (upholding the district court's definition of the term "materiality" for purposes of a mail and wire fraud conviction). *See also United States v. Gaudin*, 515 U.S. 506, 509 (1995). The Court notes that materiality of a falsehood is an element of the offense that must be decided by the jury as a factual question. *Id.* at 522-523. The falsehoods contained in the T & A Reports could be considered "material" by a jury because they permitted Mr. Ransom to retain his employment and salary while working fewer hours than administrative policy called for and without having deductions made from his accrued leave time. In other words, the false statements could have influenced the decision of HUD to continue employing Mr. Ransom and thus to continue paying him his salary, without deducting from his leave for the time absent.

## B. Theft of Government Property

Mr. Ransom additionally asserts that he cannot be found criminally liable for theft of government property under 18 U.S.C. § 641 because he was entitled to his entire salary regardless of the falsified time records and therefore could not have stolen "government property." As Mr. Ransom explained during oral argument, he contends that the "property" he received does not qualify as "government property" as he was entitled to it until HUD terminated his employment. On the other hand, the government asserts that an FLSA-exempt, salaried federal employee such as Mr. Ransom is not entitled to be paid his full salary if he does not work the requisite administrative workweek or account for

his absent time with leave. As Mr. Ransom allegedly did not work the required amount of time or use accrued leave to cover his absences, the government asserts that the money Mr. Ransom received as a "salary" did not actually belong to him, but rather remained the property of the government. In response to this Court's inquiries, the government conceded that no single authority conclusively establishes that a salaried federal employee is not entitled to a full salary if he fails to properly account for time absent from work with leave. However, the government points out that a combination of statutes, regulations, agency policies, and case law demonstrate conclusively that Mr. Ransom was entitled to be paid only for the hours he actually worked or accounted for with leave. For the reasons set forth below, the Court concludes that the unpaid salary of an FLSA-exempt federal employee in a position such as Mr. Ransom may properly be deemed "government property" under § 641. Thus, if he submitted false time reports with the requisite intent, a jury could properly find that Mr. Ransom "stole" from the United States a "thing of value" within the meaning of that statute.

1. Background Information on the Fair Labor Standards Act and its Implementation

The Fair Labor Standards Act (FLSA) is administered by the United States Department of Labor ("DOL"). Pursuant to this authority, the DOL has issued regulations applicable to employees within the private sector as well as employees in the public sector at the municipal and state levels. However, Congress delegated to the Office of Personnel Management ("OPM") the duty to administer the FLSA for the vast

majority of federal employees and OPM in turn issued its own regulations.[6]  Although the DOL and OPM Regulations both address when a federal employee will be considered exempt under the FLSA, they differ in certain significant respects.   The parties agree that the OPM Regulations govern this Court's analysis, due to Mr. Ransom's status as a federal employee.  However, the parties disagree as to the impact that the differences in the DOL and OPM Regulations should have upon this Court's analysis of whether an exempt, salaried federal employee is entitled to his entire salary regardless of the number of hours worked.

The DOL Regulations set forth a two-step process for determining whether an employee is FLSA-exempt: (1) the employee must perform a particular type of duty, such as being "employed in a bona fide executive, administrative or professional capacity," 29 C.F.R. § 541.0, and (2) the employee must be paid on a "salary basis," meaning that the employee must be regularly paid "a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed," 29 C.F.R. § 541.602(a).  The salary basis test thus generally requires that an employee receive a full salary "for any week in which [he] performs any work without regard to the number of days or hours worked." *Id.*  However, there is an exception for public employees, who may be docked for partial day absences without impact upon whether the employee is considered exempt.[7]  As the

---

[6] The OPM Regulations do not apply to individuals employed in the Library of Congress, the United States Postal Service, the Postal Rate Commission, or the Tennessee Valley Authority.

[7]  29 C.F.R. § 541.710(a), containing this public employee exception, states as follows:

DOL Regulations do not apply to federal employees, this public employee exception is applicable only to state and local officials. *See* 29 U.S.C. § 204(f) ("the Director of the Office of Personnel Management is authorized to administer the provisions of [the FLSA] with respect to any individual employed by the United States…"). *See also Adams v. United States*, 40 Fed. Cl. 303, 305 (1998). The OPM Regulations, applicable to federal employees, do not contain the salary basis test, nor the public employee exception. *Id.* at 305 n. 3. Exemption under the OPM Regulations does not hinge upon the method of calculating the employee's salary but rather upon the nature of his job. *See* 5 C.F.R. § 551.202(e) ("While established position descriptions and titles may assist in making initial FLSA exemption determinations, the designation of an employee as FLSA exempt or nonexempt must ultimately rest on the duties actually performed by the employee.").

The public employee exception to the salary basis test in the DOL Regulations evidences principles of "public accountability," principles founded upon the idea that "government employees should not be paid for time not worked due to the need to be

---

An employee of a public agency who otherwise meets the salary basis requirements of § 541.602 shall not be disqualified from exemption under §§ 541.100, 541.200, 541.300 or 541.400 on the basis that such employee is paid according to a pay system established by statute, ordinance or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because:

(1) Permission for its use has not been sought or has been sought and denied;
(2) Accrued leave has been exhausted; or
(3) The employee chooses to use leave without pay.

accountable to the taxpayers for the expenditure of public funds." *Jackson v. Kentucky*, 892 F.Supp. 923, 932 (E.D. Ky. 1995). *See also Mueller v. Reich*, 54 F.3d 438, 442 (7th Cir. 1995), *vacated on other grounds*, *Wisconsin v. Mueller*, 519 U.S. 1144 (1997). The public employee exception in the DOL Regulations thus embraces the municipal and state practice of requiring that all employees, whether salaried or hourly, account for all time spent away from work, "either by using accrued leave or if they have none by losing a pro rata portion of their salary." *Mueller v. Reich*, 54 F.3d at 442. Cognizant of the fact that the OPM Regulations do not contain this explicit "public employee" exception, the Court does not simply import the DOL public accountability principles into the OPM Regulations. *See Adams*, 40 Fed. Cl. at 306-07 (citing *Adams v. United States*, 36 Fed. Cl. 91, 97 (1996)) ("[c]aution dictates against simply importing DOL-created standards in to the federal sector without any conscious rulemaking by either DOL or OPM").[8]

---

[8] Mr. Ransom contends that under standards adopted by the Tenth Circuit, the OPM Regulations may not be considered to be based upon principles of public accountability. In *Spradling v. Tulsa*, 95 F.3d 1492 (10th Cir. 1996), the Tenth Circuit concluded that a city's pay system was not based upon principles of public accountability because the city had the discretion to deduct from an employee's salary when the employee was absent from work, and true public accountability pay systems "*require* an employer to make deductions when an employee is absent from work." *Id*. at 1500 (emphasis in original). According to Mr. Ransom, *Spradling* is relevant to this Court's analysis because the federal pay system similarly gives federal agencies the discretion of whether to charge against an employee's leave in the event he is absent from work during a portion of the day. For example, the OPM Regulations provide that, in the event an employee is "unavoidably or necessary absent for less than one hour, or tardy, the agency, for adequate reason, *may excuse him*" without deducting from his leave for the absence. 5 C.F.R. § 630.206(a) (emphasis added). However, the Court notes that this does not provide the agency with discretion to excuse an employee for absences in excess of one hour. Moreover, the provision states that the 'minimum charge for leave is one hour," unless the agency otherwise specifies. Therefore, this provision actually appears to set forth standards for the agency to charge against an employee's leave and provides the

However, as discussed below, the Court concludes that the OPM Regulations do separately evidence an intent to require that federal employees such as Mr. Ransom either work the hours called for by their administrative workweeks or account for absent time with approved leave.

2. OPM Regulations and Administrative Policies Requiring Employee Accountability

OPM regulations and HUD administrative polices establish that Mr. Ransom was entitled to receive his entire salary only if he worked the requisite time or used accrued leave to cover absences. First, HUD had implemented 5 C.F.R. § 610.111(a)(1), requiring that the head of each federal agency establish via a written policy statement a basic workweek of 40 hours per week, and set forth in writing the days and hours constituting this basic workweek. Federal regulations also required the agency to schedule this basic 40 hour workweek on 5 days, "Monday through Friday when possible," and to provide that "breaks in working hours of more than 1 hour may not be

---

agency very little discretion to excuse the employee's absence. Mr. Ransom also points to other provisions he contends grant agencies such discretion as to compel the conclusion that the federal payment system is not governed by principles of public accountability. However, the Court concludes that these provisions, permitting waiver in the event an employee has been erroneously paid extra leave, do not actually provide the agency much discretion. The provisions cited apply only in specific and limited circumstances and therefore do not give rise to the broad sweeping inference which Mr. Ransom urges.

scheduled in a basic workday." 5 C.F.R. § 610.121(a)(2) and (6). HUD's Handbook[9] implemented these regulations by defining the administrative workweek for a full-time employee as "the 40-hour basic workweek plus any regularly scheduled overtime work," a workweek to be scheduled Monday through Friday when possible.[10] The Handbook explicitly provided that it applied to full-time General Schedule employees such as Mr. Ransom. (Doc. #10 at 11).

Second, federal statutes and OPM Regulations regarding leave and an employee's accountability for leave upon termination of his employment establish that a federal employee must account for time absent from work with his accrued leave and that leave is considered a resource for which the employee is financially accountable. Federal law defines leave as "…days on which an employee would otherwise work and receive pay and are exclusive of holidays and nonworkdays established by Federal statute, Executive order, or administrative order." 5 U.S.C. § 6302(a). OPM Regulations establish standards for agencies such as HUD to follow in charging against an employee's accrued leave. For example, the minimum time for which an agency may charge against an employee's leave is one hour, unless agency rules provide otherwise. 5 C.F.R. § 630.206. An agency may excuse an employee's absence of less than one hour and not charge against his accrued leave, but may do so only if there exists "adequate reason."

---

[9] The government cites to the HUD Handbook at
http://www.hud.gov/offices/adm/hudclips/handbooks/admh/600.1/index.cfm.
[10] The government has not provided evidence that Mr. Ransom received this Handbook.
However, the Court looks to the Handbook merely to assist in determining whether Mr.
Ransom was entitled to the "property" or whether it belonged to the government. The
Court does not look to it for the purpose of determining Mr. Ransom's knowledge, a
matter for the jury to determine.

Moreover, a federal employee is financially accountable for leave taken in excess of the amount he has accrued. For example, if administrative error results in an employee taking annual leave in excess of that which he has accrued, the employee has an obligation to repay the extra amounts received unless the agency chooses to waive the obligation. The employee may choose from the following three options to satisfy this obligation: (1) he may repay it in a lump-sum payment, (2) he may pay it in installment payments, or (3) he may have it "carried forward as a charge against later-accruing annual leave," if he remains employed by the federal government. 5 U.S.C. § 6302(f). Moreover, if leave not yet earned is "advanced" to an employee and the employee leaves federal employment without ever having earned that leave, he must refund that extra amount paid. 5 C.F.R. § 630.209. Thus, OPM Regulations do not contemplate a federal employee being excessively absent from work without having to account for such time with accrued leave. Furthermore, in requiring an employee to refund excess leave taken, the OPM Regulations clearly do not treat leave as an unlimited resource that an employee may continue to draw from without consequence. Indeed, the very concept of "leave without pay,"[11] taken when an employee has no leave from which to draw, presumes that an employee is not entitled to pay in the event he must be absent from work but cannot take leave to cover the absence.

Third, OPM Regulations clearly do not place an individual of Mr. Ransom's position in the small category of federal employees who receive their salaries by virtue of

[11] Federal law defines "leave without pay" as "an absence from duty in a nonpay status." 5 C.F.R. § 630.1202.

their position and do not accrue leave or need to account for absent time through leave. Certain high-level federal employees do not accrue leave and are paid regardless of whether they are present at work. These individuals are considered exempt from the provisions of the FLSA. *See* 5 C.F.R. § 630.211 (providing that certain Presidential appointees may be excluded from regulations governing annual and sick leave). As Mr. Ransom does not fall within this class of federal employees, he was required to take leave to cover absences from work or account for leave taken in excess of that earned.

Despite such extensive authority for the proposition that Mr. Ransom was required to account for his absences through leave, Mr. Ransom asserts that federal statutes and regulations do not permit the government to reduce his salary for his failure to work a full administrative workweek or account for absent time with leave, citing to 5 C.F.R. § 551.401(d) as well as federal case law to support this proposition. First, Mr. Ransom contends that 5 C.F.R. § 551.401(d) prohibits the government from considering the number of hours a federal employee works other than for the purpose of determining the requisite minimum wage and any entitlement to overtime. 5 C.F.R. § 551.401(d) states:

> Time that is considered hours of work[12] under this part shall be used only to determine an employee's entitlement to minimum wages or overtime pay under the Act, and shall not be used to determine hours of work for pay administration under title 5, United States Code, or any other authority.

---

[12] Hours of work, in turn, is defined as "all time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency." 5 C.F.R. § 551.104.

However, Mr. Ransom's interpretation of this provision directly contradicts the clearly established federal regulatory structure concerning leave for federal employees, as described above.  Accordingly, the Court rejects Mr. Ransom's contention.[13]

## C.  Due Process

Mr. Ransom contends that the government's reliance upon the interaction of various statutes, regulations, memoranda, and case law to support its assertion of criminal liability renders the criminal statutes with which he is charged vague as applied.  When determining whether a law is unconstitutionally vague, courts must determine whether the crime is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest," *Dodger's Bar & Grill v. Johnson County Bd. of County Comm'rs*, 32 F.3d 1436, 1443 (10th Cir. 1994) (citation omitted), and is written in a manner that does not encourage arbitrary and discriminatory enforcement, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  Thus, a statute may be unconstitutionally vague under the Due Process Clause for either of two reasons: (1) if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) if it "authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703,

---

[13] Mr. Ransom points to *United States v. Harloff*, 815 F.Supp. 618 (W.D.N.Y. 1993), as persuasive authority that a salaried federal employee should not be held criminally liable for submitting falsified time records.  In *Harloff*, the district court concluded that police officers could not be charged with embezzlement under 18 U.S.C. § 666 for submitting false payroll records that indicated they worked 40 hours per week when they had not done so.  *Id.*  at 618.  To the extent that the rationale of that case is inconsistent with the analysis above, the Court declines to be guided by *Harloff*.

732 (2000) (citing *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)). Although the vagueness doctrine considers both "actual notice to citizens and arbitrary enforcement," the "more important aspect of vagueness doctrine is…the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 357-58.

Mr. Ransom asserts that the statutes and regulations upon which the government relies to establish the criminality of his conduct do not provide fair warning that falsification of his T & A Reports could subject him to criminal liability. In particular, he contends that the government's reliance upon the interaction of the various sources described above renders any application of the criminal statutes in this instance a violation of due process, as he could not be provided with the appropriate "statutory or regulatory notice" that such conduct could support a criminal conviction. In this context, Mr. Ransom also notes that the sources upon which the government relies to establish criminal conduct are merely regulatory rules or agency policies or guidelines—which he asserts cannot form the basis for criminal liability.

1. Wire Fraud

 Under 18 U.S.C. § 1343,

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Because Mr. Ransom brings an as-applied challenge, the alleged vagueness of the wire fraud statute must be considered "in light of the charged conduct." *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009), *cert. denied*, 129 S. Ct. 2813 (2009).

The evidence offered by the government purports to show that Mr. Ransom submitted to his employer T & A Reports containing false information regarding the number of hours he worked in furtherance of a scheme to defraud an agency of the United States. Admittedly, the wire fraud statute "does not (and could not) specify the innumerable fraud schemes one may devise." *See id.* at 911 (rejecting a vagueness challenge to a similar federal statute prohibiting health care fraud). However, a person of ordinary intelligence would have understood that a plan to retain one's job and salary by falsifying time records to deceive one's employer as to the number of hours actually worked constitutes a scheme to defraud or obtain money or property by false representations. *See id. See also United States v. Stewart*, 872 F.2d 957, 959 (10th Cir. 1989) (rejecting a vagueness challenge to the mail fraud statute).

The Tenth Circuit rejected an argument similar to Mr. Ransom's in *Franklin-El*. The defendant asserted that a health care fraud statute was unconstitutionally vague as applied because only by looking to several different regulations and "a provider manual, a provider agreement, and various program policies and bulletins" could it be determined what precisely the health care fraud statute prohibited. *Franklin-El*, 554 F.3d at 911. The Tenth Circuit reasoned that the health care fraud statute at issue was "not defined through other regulations," but rather—like the mail and wire fraud statutes—was

"simply a fraud statute." *Id.* As in *Franklin-El*, the complexity of the various regulations and statutes at issue here "do not alter the straightforward nature" of the wire fraud statute, or "the straightforward allegations of fraud" alleged against Mr. Ransom. *Id.* at 911. It is also important in this respect to note that the wire fraud statute requires a specific intent to defraud. *See Stewart*, 872 F.2d at 959. As the Supreme Court and the Tenth Circuit have recognized, the constitutionality of an arguably vague statutory standard "is closely related to whether that standard incorporates a requirement of *mens rea*." *Id.* (citing *Colautti v. Franklin*, 439 U.S. 379, 395 (1978)). *See also Franklin-El*, 554 F.3d at 911. "The presence of a scienter inquiry can save an otherwise vague statute. 'The Supreme Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Ward v. Utah*, 398 F.3d 1239, 1252 (10th Cir. 2005) (quoting *Murphy v. Matheson*, 742 F.2d 564, 573 (10th Cir. 1984) (internal quotation marks omitted)). "Although a specific intent requirement does not necessarily validate a criminal statute against all vagueness challenges, it does eliminate the objection that the statute punishes the accused for an offense of which he was unaware." *Stewart*, 872 F.2d at 959 (citing *Screws v. United States*, 325 U.S. 91 (1945) and *United States v. Conner*, 752 F.2d 566 (11th Cir. 1985), *cert. denied*, 474 U.S. 821. Therefore, this Court rejects Mr. Ransom's assertion that the wire fraud statute is unconstitutionally vague as applied.

2. Theft of Public Money

        Under 18 U.S.C. § 641,

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another…any record, voucher, money, or thing of value of the United States or of any department or agency thereof…Shall be fined under this title or imprisoned not more than ten years, or both…

Mr. Ransom has not asserted that First Amendment interests are implicated by § 641 and the Court therefore must assess his vagueness challenge as applied to the facts of his case. *See United States v. Evans*, 2001 WL 1013322, at *1 (D. Kan. Aug. 7, 2001) ("Vagueness challenges outside the context of the First Amendment are to be examined in light of the facts of the case, on an as-applied basis.").  As with 18 U.S.C. § 1343, Mr. Ransom contends that § 641 as applied is unconstitutionally vague because none of the various sources the government relies upon to establish criminal liability under § 641 explicitly authorize the reduction of a federal employee's salary for absences of less than one full day, and therefore they do not provide constitutionally sufficient notice that falsifying one's time sheets while a salaried employee could subject one to criminal liability.  In addition, Mr. Ransom contends that as "the common understanding of 'salary' status does not place a contingency upon a salaried employee's right to receive his full salary" based upon a requirement that a certain number of hours first be worked, the government's interpretation of the statutes and regulations "leaves the defendant uncertain" as to the prohibited conduct.  Similarly, Mr. Ransom asserts that due process prohibits the government from establishing criminal liability on the basis that Mr. Ransom violated civil regulations or administrative policies and guidelines, citing *United States v. Christo*, 614 F.2d 486 (5th Cir. 1980) and *United States v. Hilliard*, 31 F.3d 1509 (10th Cir. 1994).

The Supreme Court has explained in greater depth the various aspects of the fair warning requirement:

> There are three related manifestations of the fair warning requirement. First the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Second, as a sort of "junior version of the vagueness doctrine," the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, although clarity on the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

*United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal citations omitted).

In addition to asserting that the various statutes, regulations and memoranda fail to provide the requisite notice, Mr. Ransom requests that the Court invoke the rule of lenity. In any event, in each of the three forms of the due process inquiry, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id*. at 267.

The statute in question here, 18 U.S.C. § 641, does not refer a reader to various other statutes and regulations for the determination of what conduct is prohibited. Rather, § 641 unambiguously prohibits a specific type of conduct, theft of government property. Mr. Ransom's contention is that the various statutes, regulations, and memoranda fail to provide one with notice that a salaried federal employee's income may be considered "government property" within the meaning of § 641 in the event the employee fails to work a full administrative workweek or account for time absent from work through approved leave. Yet, as the Court pointed out above, that result is quite

24

obvious.  Moreover, a jury could infer from Mr. Ransom's attempts to conceal his actions

by falsifying his time records and the other instances in which he used leave to cover

absences that Mr. Ransom knew from the relevant rules and regulations that the property

did not belong to him[14] unless he worked a full administrative workweek or accounted for

the time off through approved leave.  In this respect, the rules and regulations addressing

the administrative workweek and leave "may be considered as both a delimitation and a

clarification of the conduct proscribed by [§ 641]."  *See United States v. Girard*, 601 F.2d

69, 71 (2nd Cir. 1979).  For example, in *Girard*, the Second Circuit affirmed the

convictions under § 641 of former and current DEA agents who sold confidential DEA

information, rejecting their argument that intangible property (the information) was not a

"thing of value" to the United States.  The rules and regulations of the DEA prohibited

the disclosure of such confidential information, and the court therefore rejected the

defendant's vagueness and overbreadth challenges to § 641, stating that they "must have

known that the sale of DEA confidential law enforcement records was prohibited.  The

DEA's own rules and regulations forbidding such disclosure may be considered as both a

delimitation and a clarification of the conduct proscribed by the statute.").  *Id.*  (citing

*United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 576-79

(1973) and *Adamian v. Jacobsen*, 523 F.2d 929 (9th Cir. 1975)).  Like the Second Circuit

in *Girard*, the Court concludes that it "should not search for statutory vagueness that did

---

[14] The government is not required to establish under § 641 that the defendant knew the
property belonged to the government at the time of the theft but rather merely that "he
knew it did not belong to him."  *See United States v. Speir*, 564 F.2d 934, 938 (10th Cir.
1977).

not exist" for Mr. Ransom himself, and therefore rejects Mr. Ransom's contention that § 641 is unconstitutionally vague as applied.

The Court additionally concludes that Mr. Ransom may be criminally charged for theft of government property regardless of whether such conduct additionally violates administrative policies or civil regulations. Mr. Ransom contends that the government may not base criminal charges upon violations of the referenced regulations and administrative policies, citing to the Fifth Circuit's decision in *United States v. Christo*, 614 F.2d 486 (5th Cir. 1980) as well as the Tenth Circuit's holding in *United States v. Hilliard*, 31 F.3d 1509 (10th Cir. 1994). However, the Court finds this case more like *Girard* and *Franklin-El* than *Christo* and *Hilliard*. The regulations and administrative policies are utilized by the government here to establish its property right much like the DEA regulations were used in *Girard* to establish that the information was a thing of value. And as with the fraud allegations in *Franklin-El*, the fact that several regulations might be implicated does not make the otherwise straightforward notion that it is an illegal act to steal someone else's property any less grounded in the language of the federal criminal code.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Ransom's motion to dismiss the indictment (doc. #7) is **denied**.

**IT IS SO ORDERED.**

Dated this 9th day of November, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge